# EXHIBIT 13

Robert D. Olmstead
61 Jefferson Drive
East Greenwich, RI 02818
Home (401) 885-4436
Cell (401) 499-6332

August 22, 2005

Christopher A. Duggan, Esq.
Smith & Duggan LLP
Lincoln North
55 Old Bedford Road
Lincoln, MA 01773

Re:   *Beijar v. Stanley Fastening Systems, L.P.*
      C.A. No. 04-10233-RCL

Dear Mr. Duggan:

At your request, I have examined the Stanley-Bostitch pneumatic nailer, model N79WW, serial number 0356 047. I have also read and studied the documents, photographs, depositions and pleadings listed in an effort to gain an understanding of how and why this accident happened. In this letter, I will use the phrases "the tool" or "the pneumatic nailer" to refer to the tool involved in Mr. Beijar's accident.

You asked me to render opinions, if I could, on, essentially, two topics: (1) the design sufficiency of the tool, and (2) whether the design of the tool was a substantial factor in Mr. Jonathon Beijar's accident. This letter sets forth my opinion on those two topics, and the bases for my opinions. I have tried to follow the outline you suggested which, as I understand it, is the outline required by Rule 26 of the Federal Rules of Civil Procedure in Massachusetts.

<u>Summary</u>

I divided this letter into several parts, as you will see. First is a list of the materials I reviewed, and work I performed, in coming to opinions and conclusions in this case. Second, I set forth my view, to within a reasonable degree of engineering certainty, as to the sequence of events leading up to Mr. Beijar's accident – a reconstruction of the accident, if you will. Third, I set forth my opinion, again to within a reasonable degree of engineering certainty, that the tool as designed and manufactured is reasonably fit for its intended and foreseeable uses. Fourth, I set forth my opinion, also to within a reasonable degree of scientific and engineering certainty, that that the design of the tool was not a substantial factor in Mr. Beijar's accident. Rather, Mr. Beijar's accident was caused by a combination of his own negligence in pulling on the air hose to take the tool off of the scaffold (according to the eyewitnesses), when he knew this was a dangerous thing to do (according to his own deposition testimony, p. 27,28) and several violations of the safety instructions both on the tool and in the manual that accompanied the tool that contributed to the accident. Specifically, the tool was left   unattended, on a scaffold, while

1

still connected to the air compressor, a flat violation of the safety manual. Finally, I have tried to address some of the claims made by Igor Paul I a letter dated July 3, 2005, which I saw for the first time on August 15th, 2005.

The opinions, obviously, are based on the facts as I now know them. If new or different evidence is developed in the future, I will certainly examine it, and determine whether any of these opinions need to be revised or altered.

I.    Material Examined and Work Done

I have examined the following pleadings, documents and deposition transcripts:

Complaint of Jonathan Beijar and Stanley's Answer;

Beijar's Answers To Interrogatories;

Stanley's Answers to Interrogatories;

Depositions of Beijar (with exhibits), Matthew Ponko, (with exhibits) Wayne Edwards, Jr. (with exhibits), and of Wayne Pinard (with exhibits);

OSHA Records;

Photographs of the accident scene;

Photographs of the Tool;

Stanley -Bostitch testing protocols;

Bostitch Operation and Maintenance Manual for the N79WW tool;

Documents produced by Bostitch to Mr. Beijar's attorney;

Copies of warnings on the N79WW as shipped;

The applicable ANSI/ISANTA 1993 standards;

Records from Care Free Homes;

Report of Igor Paul dated July 30, 2005.

In addition, I examined and tested the tool Beijar claims he was using at the time of the accident. and have reviewed the data resulting from those tests.

II.    Reconstruction

Mr. Beijar was injured on February 1, 2001, at a home construction site in Osterville, Massachusetts. The rendition given by the eyewitnesses, Ryan Cordeiro, Wayne Pinard and David Santos, essentially agree on the scenario. The Bostitch N79WW nailer was resting on an

2

overhead scaffold, still connected to the compressor, with part of the tool hanging over the side of the planking. One of the witnesses states that Mr. Beijar bumped into the loose planking causing the tool to move closer to the edge of the scaffold. According to the foreman, Mr. Beijar had been instructed to move the tool back onto the center of the planking (Pinard dep. p. 10), but Beijar apparently elected not to do this. Instead, the eyewitnesses state that Mr. Beijar pulled the tool off the planking by grabbing the air hose and pulling down (Pinard dep. p. 11, Santos Statement), something Mr. Beijar admitted he knew was unsafe to do. (Beijar deposition, p. 27,28). As the tool fell off the plank, Mr. Beijar "caught it like a football" (Pinard dep., p. 11) and pulled it towards his chest, causing the tip of the tool to contact his chest. (Pinard dep., p. 11). Either before the tip hit Mr. Beijar or just after, Mr. Beijar depressed the trigger with his thumb (Pinard dep. pp. 39-41) causing the tool to cycle. He had a clear view of the accident and the tool and was sure Mr. Beijar's thumb hit the trigger.

In sum, to a reasonable degree of engineering certainty, this accident occurred because (1) the tool was left on the plank still connected to the compressor, in violation of the Bostitch instructions and warnings; (2) Mr. Beijar pulled it off of the plank by the air hose, again against the Bostitch instructions and, in fact, did so even though he knew it was dangerous and he may get hurt; (3) he drew it towards him and the tip of the tool hit his chest; and (4) Mr. Beijar depressed the trigger of the tool when the contact trip hit his chest.

### III.    The Design Sufficiency of the Tool

To a reasonable degree of scientific certainty, it is my opinion that the tool is perfectly safe for its intended and foreseeable uses. The tool met or exceeded all industry standards, including ISANTA standards, and Stanley-Bostitch's own internal safety and product tests. It was a very new product at the time of the accident, having been sold in December of 2000, as is proven by the serial number.

Not only did the tool meet or exceed industry standards, its design is so effective that users find it a safe and efficient tool for general construction purposes. For example, Care Free Homes found it so useful that they put it back in use after the accident and continued to use it until it was replaced with another Bostitch framing nailer after Mr. Beijar filed this lawsuit. Mr. Pinard testified that these Bostitch nailers were the best pneumatic nailers he had ever used.

I tested this tool and found that it operated exactly as intended. Despite the fact that it had been in use almost continually for more than two years, it still met Bostitch's drop tests, and other test protocols. The tool will not cycle unless both the trip is depressed and the trigger is pulled. I note that Igor Paul agrees with this finding in his July 30, 2005 report.

Tools such as this can be used with either a contact trip or sequential trip activation trigger. The users had chosen the contact trip trigger, which is by far the more popular of the two triggers for commercial and construction applications. Both triggers are reasonably safe when handled in accordance with good practices and the operating instructions and warnings on the tool.

The additional or alternative designs suggested by Igor Paul in his letter of July 30, in my opinion, are either impractical or, actually, would make the tool more dangerous. Any design that requires or encourages the users to keep their fingers on or in close proximity to the trigger on these pneumatic tools creates unnecessary hazards. Further, the tool can easily be removed

from the power source as stated in the manual when not in use. Nothing further is needed or desirable to have.

This tool was sold with a sequential trip conversion kit and easy-to-follow instructions such that, had the users wished to do so, they could have converted the trigger from a contact trip to a sequential trip tool within a matter of minutes (Pinard dep. p. 19). However, there is no evidence that a sequential trip activating mechanism would have made any difference in Mr. Beijar's accident. The accident, as described by the eyewitnesses, could have occurred with either the contact trip or the sequential trip trigger. For that reason, it is important to follow all of the safety instructions that accompany the tool, including the instructions 1) to disconnect the tool from the compressor when not in use; and 2) not to pull the tool by the air hose as was described by the eyewitnesses. Indeed, Mr. Beijar admitted, in his deposition that he knew it was improper and unsafe to pull the tool by the air hose and that in doing so might well cause him injury. This is precisely what at least two eyewitnesses on the scene testified happen at the accident.

IV.    Data/Information Considered in Formation of Opinions

My opinions are based upon my examination and testing of the tool, my review of all the deposition transcripts in this case, my review of the materials that have been produced in discovery, my review of applicable safety codes, standards and regulations and my knowledge, training, education and experience in the field of design and manufacture of pneumatic tools. These are listed more specifically in part one of this letter.

V.    List of Exhibits That Summarize or Support Opinions

The deposition transcripts listed, together with the drawings prepared by the witnesses and the photographs support my reconstruction of the accident. Further support is lent by the testing I did on the tool, which proved that it still works as designed and intended, and that the tool could not and did not cycle without Mr. Beijar depressing both the trigger and the contact trip. Therefore, Mr. Beijar's statements to the contrary are not correct.

The ISANTA standards support the opinion that the tool meets industry standards and industry practice as of December of 2000 when the tool was sold.

I may do further tests or demonstrations to illustrate one or more of my opinions. If so, I will supplement this letter.

VI.    Qualifications (Including Listing of Publications Authored in Preceding Ten Years)

1.    Qualifications

My curriculum vitae are attached at Exhibit A to this disclosure.

2.    <u>Publications</u>

None

VI.    <u>Compensation for Study and/or Testimony</u>

My Fee Schedule is attached at Exhibit B to this disclosure.

VIII:    <u>List of Trial/Deposition Testimony in Preceding Four Years</u>

A list of Trial/Deposition testimony is attached at Exhibit C to this disclosure.

If you need anything further, please let me know. Thank you for the opportunity to examine this matter.


Sincerely yours,

Robert D. Olmstead

Attachment

**Robert D. Olmstead**
61 Jefferson Drive
East Greenwich, RI 02818
Home (401) 885-4436
Cell (401) 499-4332
**rolmstead@cox.net**

## Summary of Experience

I am a mechanical engineer and manager who has worked in product design for over 38 years. During that period I have been personally involved in the design, test, development, and manufacture of products such as explosion-proof electric motors, 2 and 4 cycle IC engines, chainsaws, grass trimmers, portable pumps and generators, lawn mowers, garden tractors, snow blowers, pneumatic fastener driving tools, manually operated staplers, and other miscellaneous desktop office products.

During my 38+-year career I have held positions ranging from Test Lab Technician to Department Head. I provided technical expertise, direction, and leadership that resulted in the introduction of well over 100 new products.

## Work Experience

2002-Present        Retired

1986-2002        Stanley Fastening Systems
                East Greenwich, RI

        As Director of Product Engineering and Chief Engineer I was responsible for the design, test, and development of pneumatic nailers, pneumatic staplers, a full line of office desktop products, and the nails and staples that are used by those products.

1964-1986        Homelite Division of Textron
                Charlotte, NC

        I began my career at Homelite as a Test Lab Technician while taking college courses at night. During my time at Homelite I held positions as Asst. Project Engineer, Project Engineer, Senior Project Engineer, Director of Design, Director of Professional Saw Engineering, Director of Product Engineering, and finally Executive Director, Product Engineering.
        I participated directly and/or in a leadership role in the design, test, and development of electric motor and IC engine powered chain saws, grass trimmers, hedge trimmers, leaf blowers, pumps, generators, lawn mowers, garden tractors, and snow blowers.

1962-1964    United States Army

I was drafted and served as a tank gunner/driver achieving the rank of SP4. I was honorably discharged in 1964.

1959-1962    Westinghouse Electric Corporation
Buffalo, NY

As an Engineering Aide, I assisted in the design, test, and development of medium to large explosion proof electric motors for use in the mining and textile industries.

## Education

Masters in Business Administration
University of Connecticut – 1975

Bachelor of Science in Mechanical Engineering
Bridgeport University – 1971

Associate in Applied Science
Alfred State Tech. – 1959

## Addition Training

Finite Element Analysis (FEA) – 1987 and 1994

Failure Mode and Effects Analysis (FMEA) – 1999

Design of Experiments (DOE) – 2000

## Patents

United States Patent No. 3,570,464 describing a recoil starting mechanism for small internal combustion engines.

United States Patent No. 6,431,430 describing a battery operated roofing nailer and the nails for use in that nailer.

United States Patent No. 6,488,195 describing a multi-stroke fastening device.

(Exhibit A)

Robert D. Olmstead
61 Jefferson Drive
East Greenwich, RI 02818

Home (401) 885-4436
Cell (401) 499-6332

FEE SCHEDULE: 2005

Consultation – Research – Report Writing: $150.00/Hr.
 Verbal communication with attorney or client in person or by phone.
 Any time spent reviewing documents, report preparation, testing, and
 inspection of products or site.

Deposition Testimony: $250.00/Hr.

Trial Testimony: $250.00/Hr.

Clerical Services: $75.00/Hr.

Idle Time: $75.00/Hr.
 Time spent waiting as required, but not actively working on the related
 claim.

Travel Expenses: $75.00/Hr. plus incurred expenses.
 Travel expenses include airfare, trains, taxi, lodging, meals, parking
 automobile rental, and road tolls. Trips over 200 miles will be by air travel.
 Automobile rental will be mid-sized or full sized automobiles.

 Note: Combined Travel and Idle time on the same day not to exceed 8
 hours and are in addition to time spent actively working on the related
 claim.

Mileage: $0.375/Mile

Billing:
 Invoices will be submitted on a monthly basis or as expenses are incurred.

(Exhibit B)

# Robert D. Olmstead Trial/Deposition Testimony, August 2001 - August 2005

| Testimony | Date | Case |
|---|---|---|
| Depo | 01/17/02 | Armando Villasuso and Leslie Villasuso v. Stanley-Bostitch, Inc., and Home Depot U.S.A., Inc.<br>Dade County (Fla.) Circuit Court Case No. 98-0055-CA-09 |
| Depo | 01/21/02 | Paul W. Murphy v. Paul Cappella and Stanley-Bostitch, Inc.<br>Plymouth County (Mass.) Superior Court Case No. 00-1165 |
| Depo | 02/22/02 | Dennis R. Miller and Gina Miller v. Stanley-Bostitch, Inc.; Halsted [sic] Enterprises, Inc.; Blach Construction Company; Greg Kleinsmid and Linda Taccolini; and Does 1 through 100, inclusive<br>Santa Clara County (Calif.) Superior Court Case No. CV775088 |
| Depo | 03/14/02 | James T. Wells v. Stanley-Bostitch, Inc.; The Stanley Works, Inc.; and Stine, Inc., d/b/a Stine Lumber Company<br>U.S. District Court (W.D. La.) Case No. 2:00CV0591 |
| Depo | 07/10/02 | Paul W. Murphy v. Paul Cappella and Stanley-Bostitch, Inc.<br>Plymouth County (Mass.) Superior Court Case No. 00-1165 |
| Depo | 07/24/02 | Premier Fence Specialists v. The Stanley Works, Inc.<br>U.S. District Court (D. Minn.) Case No. 01-2293RHK/JMM |
| Depo | 08/01/02 | Paul W. Murphy v. Paul Cappella and Stanley-Bostitch, Inc.<br>Plymouth County (Mass.) Superior Court Case No. 00-1165 |
| Depo | 12/17/02 | Anthony Golliday v. Stanley-Bostitch, Inc.; Roger Lee Newberry d/b/a D&B Pallet Co.; Darcell Newberry d/b/a D&B Pallet Co.; and Belinda Newberry d/b/a D&B Pallet Co.<br>City of St. Louis (Mo.) Circuit Court Case No. 012-00458 |
| Depo | 02/04/03 | Dennis R. Miller and Gina Miller v. Stanley-Bostitch, Inc.; Halsted [sic] Enterprises, Inc.; Blach Construction Company; Greg Kleinsmid and Linda Taccolini; and Does 1 through 100, inclusive<br>Santa Clara County (Calif.) Superior Court Case No. CV775088 |
| Depo | 03/25/03 | Dennis R. Miller and Gina Miller v. Stanley-Bostitch, Inc.; Halsted [sic] Enterprises, Inc.; Blach Construction Company; Greg Kleinsmid and Linda Taccolini; and Does 1 through 100, inclusive<br>Santa Clara County (Calif.) Superior Court Case No. CV775088 |
| Trial | 03/04/04 | James T. Wells v. Stanley-Bostitch, Inc.; The Stanley Works, Inc.; and Stine, Inc., d/b/a Stine Lumber Company<br>U.S. District Court (W.D. La.) Case No. 2:00CV0591 |
| Depo | 05/21/04 | Paula Behrman, as surviving spouse, statutory representative and Guardian ad Litem, on her own behalf and on behalf of the Estate of Russell Norman Behrman, and on behalf of the beneficiaries of Russell Norman Behrman, daughters Amber Behrman and Ashlyn Behrman, minor children, and Russell Norman Behrman's father, Harold Behrman; and David Brown v. ICI Incorporated; ICI Americas, Inc.; The Glidden Company; The Stanley Works, Inc.; Primesource Building Products, Inc.; The Home Depot U.S.A., Inc.; and John Doe<br>U.S. District Court (D. Ariz.) Case No. CV-03326 TUC (FRZ) |

## Robert D. Olmstead Trial/Deposition Testimony, August 2001 - August 2005

| Testimony | Date | Case |
|-----------|------|------|
| Depo | 07/14/04 | *William Gorman v. C & M Home Builders; Stanley Bostitch; and Home Depot*<br>Philadelphia County Court of Common Pleas Case No. 002529 |
| Depo | 05/16/05 | *Richard Kanowske and Carol Kanowske; IEA, Inc.; and Liberty Mutual Insurance Co. v. Stanley Fastening Systems, L.P.; ABC Insurance Co.; Stanley Fastening Systems, Inc.; ABD Insurance Co.; Menard, Inc.; and ABE Insurance Co.*<br>Kenosha County (Wisc.) Circuit Court Case No. 03-CV-000537 |

# Robert D. Olmstead Trial/Deposition Testimony, August 2001 - August 2005

| Testimony | Date | Case |
|---|---|---|
| Depo | 01/17/02 | *Armando Villasuso and Leslie Villasuso v. Stanley-Bostitch, Inc., and Home Depot U.S.A., Inc.*<br>Dade County (Fla.) Circuit Court Case No. 98-0055-CA-09 |
| Depo | 01/21/02 | *Paul W. Murphy v. Paul Cappella and Stanley-Bostitch, Inc.*<br>Plymouth County (Mass.) Superior Court Case No. 00-1165 |
| Depo | 02/22/02 | *Dennis R. Miller and Gina Miller v. Stanley-Bostitch, Inc.; Halsted [sic] Enterprises, Inc.; Blach Construction Company; Greg Kleinsmid and Linda Taccolini; and Does 1 through 100, inclusive*<br>Santa Clara County (Calif.) Superior Court Case No. CV775088 |
| Depo | 03/14/02 | *James T. Wells v. Stanley-Bostitch, Inc.; The Stanley Works, Inc.; and Stine, Inc., d/b/a Stine Lumber Company*<br>U.S. District Court (W.D. La.) Case No. 2:00CV0591 |
| Depo | 07/10/02 | *Paul W. Murphy v. Paul Cappella and Stanley-Bostitch, Inc.*<br>Plymouth County (Mass.) Superior Court Case No. 00-1165 |
| Depo | 07/24/02 | *Premier Fence Specialists v. The Stanley Works, Inc.*<br>U.S. District Court (D. Minn.) Case No. 01-2293RHK/JMM |
| Depo | 08/01/02 | *Paul W. Murphy v. Paul Cappella and Stanley-Bostitch, Inc.*<br>Plymouth County (Mass.) Superior Court Case No. 00-1165 |
| Depo | 12/17/02 | *Anthony Golliday v. Stanley-Bostitch, Inc.; Roger Lee Newberry d/b/a D&B Pallet Co.; Darcell Newberry d/b/a D&B Pallet Co.; and Belinda Newberry d/b/a D&B Pallet Co.*<br>City of St. Louis (Mo.) Circuit Court Case No. 012-00458 |
| Depo | 02/04/03 | *Dennis R. Miller and Gina Miller v. Stanley-Bostitch, Inc.; Halsted [sic] Enterprises, Inc.; Blach Construction Company; Greg Kleinsmid and Linda Taccolini; and Does 1 through 100, inclusive*<br>Santa Clara County (Calif.) Superior Court Case No. CV775088 |
| Depo | 03/25/03 | *Dennis R. Miller and Gina Miller v. Stanley-Bostitch, Inc.; Halsted [sic] Enterprises, Inc.; Blach Construction Company; Greg Kleinsmid and Linda Taccolini; and Does 1 through 100, inclusive*<br>Santa Clara County (Calif.) Superior Court Case No. CV775088 |
| Trial | 03/04/04 | *James T. Wells v. Stanley-Bostitch, Inc.; The Stanley Works, Inc.; and Stine, Inc., d/b/a Stine Lumber Company*<br>U.S. District Court (W.D. La.) Case No. 2:00CV0591 |
| Depo | 05/21/04 | *Paula Behrman, as surviving spouse, statutory representative and Guardian ad Litem, on her own behalf and on behalf of the Estate of Russell Norman Behrman, and on behalf of the beneficiaries of Russell Norman Behrman, daughters Amber Behrman and Ashlyn Behrman, minor children, and Russell Norman Behrman's father, Harold Behrman; and David Brown v. ICI Incorporated; ICI Americas, Inc.; The Glidden Company; The Stanley Works, Inc.; Primesource Building Products, Inc.; The Home Depot U.S.A., Inc.; and John Doe*<br>U.S. District Court (D. Ariz.) Case No. CV-03326 TUC (FRZ) |

# Robert D. Olmstead Trial/Deposition Testimony, August 2001 - August 2005

| Testimony | Date | Case |
| --- | --- | --- |
| Depo | 07/14/04 | *William Gorman v. C & M Home Builders; Stanley Bostitch; and Home Depot*<br>Philadelphia County Court of Common Pleas Case No. 002529 |
| Depo | 05/16/05 | *Richard Kanowske and Carol Kanowske; IEA, Inc.; and Liberty Mutual Insurance Co. v. Stanley Fastening Systems, L.P.; ABC Insurance Co.; Stanley Fastening Systems, Inc.; ABD Insurance Co.; Menard, Inc.; and ABE Insurance Co.*<br>Kenosha County (Wisc.) Circuit Court Case No. 03-CV-000537 |

(Exhibit C)

# EXHIBIT 14

**U.S. Department of Labor**
Occupational Safety and Health Administration

Inspection Number: 302926373
Inspection Dates: 02/02/2001 - 02/06/2001
Issuance Date:    06/22/2001



## Citation and Notification of Penalty

Company Name:    Care Free Homes Corporation
Inspection Site:    Lot 14-5 Pirates Cove Road, Osterville, MA  02655

---

Citation 1 Item 1    Type of Violation:   **Serious**

29 CFR 1926.302(b)(6): The use of hoses for hoisting or lowering tools was permitted:
Location: Jobsite

An employee pulled on the hose to remove a nailgun from a plank.

   "ABATEMENT DOCUMENTATION IS REQUIRED FOR THIS ITEM".

| Date By Which Violation Must be Abated: | 06/26/2001 |
|---|---|
| Proposed Penalty: | $   1500.00 |

Citation 1 Item 2    Type of Violation:   **Serious**

29 CFR 1926.451(g)(1):  Each employee on a scaffold more than 10 feet (3.1 m) above a lower level shall be protected from falling to that lower level:

Location: jobsite

Employees were not provided with fall protection while working from the carpenter bracket scaffolds which were over ten feet from the ground.

| Date By Which Violation Must be Abated: | 06/26/2001 |
|---|---|
| Proposed Penalty: | $    600.00 |

---

See pages 1 through 3 of this Citation and Notification of Penalty for information on employer and employee rights and responsibilities.

U.S. Department of Labor
Occupational Safety and Health Administration

Inspection Number: 302926373
Inspection Dates: 02/02/2001 - 02/06/2001
Issuance Date:       06/22/2001



## Citation and Notification of Penalty

Company Name:    Care Free Homes Corporation
Inspection Site:    Lot 14-5 Privates Cove Road, Osterville, MA  02655

---

### Citation 1 Item 3  Type of Violation:  **Serious**

29 CFR 1926.501(b)(13):  Each employee engaged in residential construction activities six feet (1.8m) or more above lower levels shall be protected by guardrail systems, safety net system, or personal fall arrest system unless another provision in paragraph (b) of this section provides for an alternative fall protection measure.  Exception:  When the employer can demonstrate that it is infeasible or creates a greater hazard to use these systems, the employer shall develop and implement a fall protection which meets the requirements of paragraph (k) of 1926.502:

Location: First Floor of jobsite:

Two floor holes open about 3 feet by 4 feet were not protected by floor hole covers to prevent employees from falling over 6 feet to the basement below.

| | |
|---|---|
| Date By Which Violation Must be Abated: | 06/26/2001 |
| Proposed Penalty: | $      1050.00 |

Brenda J. Gordon
Area Director

---

See pages 1 through 3 of this Citation and Notification of Penalty for information on employer and employee rights and responsibilities.

**U.S.** Department of Labor
Occupational Safety and Health Administration
Boston Area Office South
639 Granite Street–4th floor
Braintree, MA 02184
Phone: (617)565-6924 FAX: (617)565-6923



# INVOICE/
# DEBT COLLECTION NOTICE

---

**Company Name:**     Care Free Homes Corporation
**Inspection Site:**     Lot 14-5 Prirates Cove Road, Osterville, MA 02655
**Issuance Date:**     06/22/2001

Summary of Penalties for Inspection Number 302926373

| | | | |
|---|---|---|---|
| **Citation 1, Serious** | = | $ | 3150.00 |
| **TOTAL PROPOSED PENALTIES** | = | $ | 3150.00 |

---

To avoid additional charges, please remit payment promptly to this Area Office for the total amount of the uncontested penalties summarized above. Make your check or money order payable to:
  "DOL-OSHA". Please indicate OSHA's Inspection Number (indicated above) on the remittance.

OSHA does not agree to any restrictions or conditions or endorsements put on any check or money order for less than full amount due, and will cash the check or money order as if these restrictions, conditions, or endorsements do not exist.

Pursuant to the Debt Collection Act of 1982 (Public Law 97-365) and regulations of the U.S. Department of Labor (29 CFR Part 20), the Occupational Safety and Health Administration is required to assess interest, delinquent charges, and administrative costs for the collection of delinquent penalty debts for violations of the Occupational Safety and Health Act.

Interest. Interest charges will be assessed at an annual rate determined by the Secretary of the Treasury on all penalty debt amounts not paid within one month (30 calendar days) of the date on which the debt amount becomes due and payable (penalty due date). The current interest rate is 6%. Interest will accrue from the date on which the penalty amounts (as proposed or adjusted) become a final order of the Occupational Safety and Health Review Commission (that is, 15 working days from your receipt of the Citation and Notification of Penalty), unless you file a notice of contest. Interest charges will be waived if the full amount owed is paid within 30 calendar days of the final order.

**Delinquent Charges.** A debt is considered delinquent if it has not been paid within one month (30 calendar days) of the penalty due date or if a satisfactory payment arrangement has not been made. If the debt remains delinquent for more than 90 calendar days, a delinquent charge of six percent (6%) per annum will be assessed accruing from the date that the debt became delinquent.

**Administrative Costs.** Agencies of the Department of Labor are required to assess additional charges for the recovery of delinquent debts. These additional charges are administrative costs incurred by the Agency in its attempt to collect an unpaid debt. Administrative costs will be assessed for demand letters sent in an attempt to collect the unpaid debt.


_____                    _____6/22/01_____
Brenda J. Gordon                                    Date
Area Director

U.S. Department of Labor
Occupational Safety and Health Administration



# Inspection Report

Tue Feb 6, 2001 3:49pm

| Rpt ID | Assignment Nr. | CSHO ID | Supervisor ID | Inspection Nr. | Opt. Insp. Nr. |
|---|---|---|---|---|---|
| 0111400 | 0 | Eλ9C | C6957 | 302926373 | 209 |

| Establishment Name | | | Care Free Homes Corporation | | | |
|---|---|---|---|---|---|---|
| Site Address | Lot 14-5 Prirates Cove Road Osterville, MA 02655 | | | Site Phone | (508) 509-7928 | Site FAX |
| Mailing Address | 239 Huttleston Avenue Fairhaven, MA 02719-1957 | | | Mail Phone | (508) 997-1111 | Mail FAX |
| Controlling Corp | | | | Employer ID | | 043106517 |
| Ownership | A. Private Sector | | | City | 0970 | County 001 |
| Legal Entity | | | Previous Activity (State Only) | | | |

| Related Activity | | | | | | |
|---|---|---|---|---|---|---|
| Type | Number | Satisfied | | Type | Number | Satisfied |
| R. Referral | 200466100 | Safety | | | | |

| Employed in Establishment | | Advance Notice? | No | Category | S. Safety |
|---|---|---|---|---|---|
| Covered By Inspection | | Union? | No | Primary SIC | 1521 |
| Controlled By Employer | | Walkaround? | Yes | Secondary SIC | |
| | | Interviewed? (State only) | Yes | Inspected (State Only) | |

| Inspection Type | C. Referral | Reason No Inspection | |
|---|---|---|---|
| Scope of Inspection | A. Comprehensive Inspection | | |
| Classification | | | |
| Strategic Initiatives | | | |
| National Emphasis | | | |
| Local Emphasis | | | |

| Anticipatory Warrant Served? | No | Denial Date | Date ReEntered | Date ReDenied | ReEntered |
|---|---|---|---|---|---|
| Anticipatory Subpoena Served? | No | | | | |

| Entry | 02/02/01 | | First Closing Conference | 02/06/01 | |
|---|---|---|---|---|---|
| Opening Conference | 02/02/01 | | Second Closing Conference | | |
| Walkaround | 02/02/01 | | Exit | | |
| Days On Site | 1 | | Case Closed | | |
| | | | No Citations Issued | | |

| Type | ID | Optional Information | |
|---|---|---|---|
| N | 01 | 302926373 | |

| CSHO Signature | | | Date | |
|---|---|---|---|---|
| | | | | |

OSHA-1t Rev. 6 931

Occupational Safety and Health Administration

# Inspection Narrative

Tue Feb 6, 2001 3:49pm

| | |
|---|---|
| Inspection Nr. | 302926373 |
| Opt. Case Number | 209 |

| | |
|---|---|
| Establishment Name | Care Free Homes Corporation |
| Legal Entity | Type of Business |

| Additional Citation Mailing Addresses |
|---|

| Organized Employee Groups |
|---|

| Authorized Employee Representatives |
|---|

| Employer Representatives Contacted | | | |
|---|---|---|---|
| Name | Title | Function | Walk Around? |
| Wayne Pinard | Foreman | I O C | Y |

| Other Persons Contacted |
|---|

Wayne Edwards Sr.
Co/ Owner

| | | | | | |
|---|---|---|---|---|---|
| Entry | 02/02/01 | | First Closing Conference | 02/06/01 | |
| Opening Conference | 02/02/01 | | Second Closing Conference | | |
| Walkaround | 02/02/01 | | Exit | | |
| | | | Case Closed | | |

| Penalty Reduction Factors | | | | | |
|---|---|---|---|---|---|
| Size | 60 | Good Faith | 10 | History | 10 |

| Followup Inspection? | | Reason | |
|---|---|---|---|

OSHA-1A(Rev. 6/93)

Page _
Care Free Homes Corporation

Tue Feb 6, 2001 3:49pm
Inspection Nr. 302926373

| Coverage Information/Additional Comments |
|---|

SAFETY NARRATIVE

| Inspection Number | 302926373 |
|---|---|

## COVERAGE INFORMATION

### NATURE AND SCOPE

Check Applicable Boxes and Explain Findings:

[ ] Complaint Items

[x] Referral Items

[ ] Accident Investigation Summary & Findings

[ ] LEP

[ ] Planned Inspection

### NATURE AND SCOPE -- UNUSUAL CIRCUMSTANCES (Mark X and explain all that apply:)

[x] None

[ ] Denial of entry (see denial memo)

[ ] Delays in conducting the inspection

[ ] Strikes

[ ] Jurisdictional Issues

[ ] Trade Secrets

[ ] Other

Comments:On 02/02/01 This CSHO responded to an accident that had occurred on 02/01/01 at Pirates Cove Road on Oyster Bay in Osterville, MA. When I arrived on site the employees for Care Free Homes were at lunch. During the time it took for them to come back to the site I conducted a walk around inspection which included the first floor of this wood frame home, during the walk around I observed opened sided floors, holes in floors, wall openings, dressed lumber being used as scaffold grade plank and the spans of 14 feet while used on siding brackets, in addition to training. When the employees came back from lunch, the foreman explained the details leading up to and including the accident to Ex 7c , moving from one location to another when he realized that the nail gun was left on the plank that he was working on. A ladder wasn't available to climb up and get the gun so he pulled on the hose, causing the nail gun to fall and simultaneously in an attempt to catch the gun, the foot depressed against      chest which released the safety at the same time that the other hand hit the trigger allowing the gun to fire a 3 1/2 inch nail into his heart. Wayne Pinard told _  7c    to take him to the hospital. According to  7c     was hurting, while passing the Osterville Fire Department        stopped and got help from the EMT's and was trans ported to the Cape Cod Hospital and the med flighted to the New England Medical Center where they preformed open heart surgery and expect  Nb  to have a full recovery.

## OPENING CONFERENCE NOTES:

OSHA-1A(Rev. 6/93)

Page 3                                                                Tue Feb 6. 2001 3:49pm
Care Free Homes Corporation                                          Inspection Nr. 302926373

## RECORDKEEPING PROGRAMS
(Other than 29 CFR 1904 requirements)

Does the employer have a recordkeeping program relating to any occupational health issues (monitoring, medical, training, respirator fit tests, ventilation measurements. etc.)?

☐ Yes    ☐ No

Are any programs required by OSHA health standards?

☐ Yes    ☐ No

## COMPLIANCE PROGRAMS
(engineering controls, PPE, regulated areas, emergency procedures, compliance plans, etc.)

Address any relevant compliance efforts regarding potential health hazards covered by the scope of the inspection.

## PERSONAL HYGIENE FACILITIES AND PRACTICES
(showers, lockers, change rooms, etc.)

Are any required by OSHA health standards?

☐ Yes    ☐ No

What Standards:

## HAZARD COMMUNICATION PROGRAM

Written Program (complete)

☐ Yes    ☒ No

MSDS's (all)

☐ Yes    ☒ No

Labeling (adequate)

☐ Yes    ☒ No

Training (complete)

☐ Yes    ☒ No

Copy MSDS's/Program attached

☐ Yes    ☒ No

Comments:

## ACCESS TO EXPOSURE & MEDICAL RECORDS

## FIRE PROTECTION AND EVACUATION PROCEDURES

## SYSTEMS SAFETY AND EMERGENCY RESPONSE

## RESPIRATOR PROGRAM

## LOCKOUT TAGOUT/ \ELECTRICAL SAFE WORKPRACTICES

OSHA-1A(Rev. 6/93)

Page 4
Care Free Homes Corporation

Tue Feb 6, 2001 5:49pm
Inspection Nr. 302926373

FIRST AID

ELECTRICAL SAFE WORKPRACTICES

EXPOSURE CONTROL PLAN

LABORATORY STANDARD

ERGONOMIC PROBLEMS

☐ Yes  ☐ No
If yes, complete the items 1 and 2 below.

1.  Lifting (10% or more similarly exposed employees injured)

    a. Total # of employees exposed to job:

    b. Total # of cases for job:

2.  CTD's (10% or more similarly exposed employees have CTD's; 5% or more CTS cases)

    a. Total # of employees exposed to job:

    b. Total # of cases for job:

    Other significant injury/illness trends

☐ Yes  ☐ No
If yes, explain.

### EVALUATION OF EMPLOYER'S OVERALL SAFETY AND HEALTH PROGRAM

General Industry:

☐ Yes  ☐ No  Employer has a Safety & Health Program

☐ Yes  ☐ No  Written

☐ Yes  ☐ No  Copy Attached

Construction Industry:

☐ Yes  ☒ No  Accident Prevention Program

☐ Yes  ☒ No  Written

☐ Yes  ☒ No  Copy Attached

Evaluation of Safety and Health Program
(0 = Nonexistent 1 = Inadequate 2 = Average 3 = Above average)

Written S&H Program

OSHA-1A(Rev. 6/93)

Page 5
Care Free Homes Corporation

Tue Feb 6, 2001 3:49pm
Inspection Nr. 302926373

Communication to Employees

Enforcement

Safety Training Program

Health Training Program

Accident Investigation Performed

Preventive Action Taken

Comments:This contractor has been in business for 24 years and has had 6 recordables that were minor in nature and has not refused any of his employees anything pertaining to safety in fact has encouraged it however he has not pursued safety with respect a written program and enforcement that include the elements associated with home building. I sent this contractor a mailing including State consultation and residential building

## CLOSING CONFERENCE NOTES:

Were any unusual circumstances encountered such as, but not limited to, abatement problems, expected contest and/or negative employer attitude? If yes, explain below.
0

☐ Yes   ☒ No

19. Closing Conference Checklist ("x" as appropriate)
☐ No Violations Observed

☐ Gave Copy Employer Rights

☒ Reviewed Hazards & Standards

☒ Discuss Employer Rights/Obligations

☒ Encouraged Informal Conference

☐ Offered Abatement Assistance

☒ Discussed Consultation Programs

☐ Employer/Employee Questionnaires

### Closing Conference Held with Employee Representative

☐ Jointly   ☒ Separately

| CSHO Signature | | Date | |
|---|---|---|---|
| Accompanied By | | | |

OSHA-1A(Rev. 6.93)

Page 6
Care Free Homes Corporation

Tue Feb 6, 2001 3:49pm
Inspection Nr. 302926373

Occupational Safety and Health Administration

# Worksheet .

Fri Jun 22. 2001 12:06pm .

| Inspection Number | 302926373 |
|---|---|
| Opt. Insp. Number | 209 |

| Establishment Name | Care Free Homes Corporation | | | | |
|---|---|---|---|---|---|
| Type of Violation | S Serious | Citation Number | 01 | Item/Group | 001 |
| Number Exposed | 4 | No. Instances | 1 | REC | R Referral |
| Std. Alleged Vio. | 1926.0302( b)( 6) | | | | |

| Abatement Period | MultiStep Abatements | | | Final Abatement | Action Type/Dates |
|---|---|---|---|---|---|
| | PPE Period | Plan | Report | | |
| 1 | | | | 06/26/01 | |
| Abatement Documentation Required | | | Y | Date Verified | |

| Substance Codes | |
|---|---|

| AVD/Variable Information: | |
|---|---|

29 CFR 1926.302(b)(6): The use of hoses for hoisting or lowering tools was permitted:
Location: Jobsite

An employee pulled on the hose to remove a nailgun from a plank.

| Penalty Calculations | | | | Adjustment Factors | | | Proposed Adjusted Penalty |
|---|---|---|---|---|---|---|---|
| Severity | Probability | Gravity | GBP | Size | Good Faith | History | |
| H High | G Greater | 10 | 5000.00 | 60 | 0 | 10 | 1500.00 |
| Repeat Factor | | 0 | | | | | |

| Employee Exposure: | |
|---|---|

| Instance Description: | A. Hazard | B. Equipment | C. Location | D. Injury/Illness | E. Measurements |
|---|---|---|---|---|---|

| Event Date | Event Code | Action Code | Citation Type | Penalty | Abate Date | Final Order |
|---|---|---|---|---|---|---|
| 06/22/01 | Z Add transaction | A Add | S Serious | 1500.00 | 06/26/01 | |

Occupational Safety and Health Administration

# Worksheet ·

Fri Jun 22, 2001 12:06pm

| | Inspection Number | 302926373 |
|---|---|---|
| | Opt. Insp. Number | 209 |

| Establishment Name | Care Free Homes Corporation | | | | | |
|---|---|---|---|---|---|---|
| Type of Violation | S Serious | Citation Number | 01 | Item/Group | | 002 |
| Number Exposed | 4 | No. Instances | 2 | REC | | |
| Std. Alleged Vio. | 1926.0451( g)( 1) | | | | | |

| Abatement Period | MultiStep Abatements | | | Final Abatement | Action Type/Dates | | |
|---|---|---|---|---|---|---|---|
| | PPE Period | Plan | Report | | | | |
| 1 | | | | 06/26/01 | | | |
| Abatement Documentation Required | | | | Date Verified | | | |

| Substance Codes | |
|---|---|
| | |

| AVD/Variable Information: |
|---|

29 CFR 1926.451(g)(1):  Each employee on a scaffold more than 10 feet (3.1 m) above a lower level shall be protected from falling to that lower level:

Location: jobsite

Employees were not provided with fall protection while working from the carpenter bracket scaffolds which were over ten feet from the ground.

| Penalty Calculations | | | | Adjustment Factors | | | Proposed Adjusted Penalty |
|---|---|---|---|---|---|---|---|
| Severity | Probability | Gravity | GBP | Size | Good Faith | History | |
| M Medium | L Lesser | 02 | 2000.00 | 60 | 0 | 10 | 600.00 |
| Repeat Factor | | 0 | | | | | |

| Employee Exposure: |
|---|

| Instance Description: | A. Hazard    B. Equipment    C. Location    D. Injury/Illness    E. Measurements |
|---|---|

| Event Date | Event Code | Action Code | Citation Type | Penalty | Abate Date | Final Order |
|---|---|---|---|---|---|---|
| 06/22 01 | Z Add transaction | A Add | S Serious | 600.00 | 06/26/01 | |

Occupational Safety and Health Administration

# Worksheet

Fri Jun 22. 2001 12:06pm

| | | Inspection Number | 302926373 |
|---|---|---|---|
| | | Opt. Insp. Number | 209 |

| Establishment Name | Care Free Homes Corporation | | | | |
|---|---|---|---|---|---|
| Type of Violation | S Serious | Citation Number | 01 | Item/Group | 003 |
| Number Exposed | 4 | No. Instances | 2 | REC | |
| Std. Alleged Vio. | 1926.0501( b)(13) | | | | |

| Abatement Period | MultiStep Abatements | | | Final Abatement | Action Type/Dates |
|---|---|---|---|---|---|
| | PPE Period | Plan | Report | | |
| 1 | | | | 06/26/01 | |
| Abatement Documentation Required | | | | Date Verified | |

| Substance Codes | |
|---|---|

| AVD/Variable Information: | |
|---|---|

29 CFR 1926.501(b)(13): Each employee engaged in residential construction activities six feet (1.8m) or more above lower levels shall be protected by guardrail systems. safety net system, or personal fall arrest system unless another provision in paragraph (b) of this section provides for an alternative fall protection measure. Exception: When the employer can demonstrate that it is infeasible or creates a greater hazard to use these systems. the employer shall develop and implement a fall protection which meets the requirements of paragraph (k) of 1926.502:

Location: First Floor of jobsite:

Two floor holes open about 3 feet by 4 feet were not protected by floor hole covers to prevent employees from falling over 6 feet to the basement below.

| Penalty Calculations | | | | Adjustment Factors | | | Proposed Adjusted Penalty |
|---|---|---|---|---|---|---|---|
| Severity | Probability | Gravity | GBP | Size | Good Faith | History | |
| M Medium | G Greater | 05 | 3500.00 | 60 | 0 | 10 | 1050.00 |
| Repeat Factor | | 0 | | | | | |

| Employee Exposure: | |
|---|---|

| Instance Description: | A. Hazard | B. Equipment | C. Location | D. Injury/Illness | E. Measurements |
|---|---|---|---|---|---|

| Event Date | Event Code | Action Code | Citation Type | Penalty | Abate Date | Final Order |
|---|---|---|---|---|---|---|
| 06/22/01 | Z Add transaction | A Add | S Serious | 1050.00 | 06/26/01 | |

U. S. Department of Labor
Occupational Safety and Health Administration

# Referral Report
Tue Feb 6, 2001 3:55pm

| Reporting ID | 0111400 | Previous Activity | | 0 | | Referral Number | 200466100 |
|---|---|---|---|---|---|---|---|
| Establishment Information | Establishment Name | Care Free Homes Corporation | | | | Employer ID | 043106517 |
| | Site Address | Lot 14-5 Prirates Cove Road<br>Osterville MA 02655 | | | City Code 0970 | County Code | 001 |
| | | Site Phone | (508) 509-7928 | | Site Fax: | | |
| | Mailing Address | 239 Huttleston Avenue<br>Fairhaven MA 02719-1957 | | | | | |
| | | Mailing Address Phone | (508) 997-1111 | | Fax: | | |
| Industry & Ownership | Type of Business | | | | | Primary SIC 1521 | No. of Employees 4 |
| | Ownership | A. Private Sector | | | | | |
| Source | Referred By | G. State/Local Government | | | | Date Received | 02/02/01 |
| | Source or Contact (Name, Location, Affiliation, Telephone Number): | | | | | | |
| Referral Classification | Safety - Serious | | | | | | |

HAZARD DESCRIPTION:

An employee was injured when a pneumatic nail gun accidently discharged driving a 3/12 inch nail into the employees chest. The employee was taken to the Cape Cod Hospital where he was taken by helicopter to the New England Medical Center for treatment.

| Referral Action | Send Letter | | | Date Letter Sent | Date Response Due | Response Received (Satisfactory or Not Satisfactory) | | Supervisor(s) Assigned | |
|---|---|---|---|---|---|---|---|---|---|
| | Inspection Planned? Yes | | If Yes, Priority: b | | | | If No, Reason: | | |
| | Transfer To (Name): | | | | | | Transfer Date | | |
| | Transfer To Category: | | | | | | | | |
| Strategic Initiatives | | | | | | | | | |
| National Emphasis | | | | | | | | | |
| Local Emphasis | | | | | | | | | |
| Optional Information | Type | ID | Optional Information Value | | | | | | |
| Close Referral | X | | | | | | | | |
| Comments | | | | | | | | | |

In the matter of: Care Free Homes Corporation  OSHA# 302926373

## EXPEDITED INFORMAL SETTLEMENT AGREEMENT

The undersigned EMPLOYER and the undersigned Occupational Safety and Health Administration (OSHA), in settlement of the above reference Citation(s) and Notification(s) of Penalty which were issued on   hereby agree as follows:

1. The EMPLOYER agrees to correct the violations as cited in the above referenced citation(s).

2. The EMPLOYER agrees to provide evidence of the actions taken to correct the cited violations.

3. Upon correction of all violations, the EMPLOYER agrees to provide written certification to the area director that all of the violations have been corrected. The EMPLOYER agrees to post a copy of the written certification for a period of three working days in the same location where the citations were posted as described in paragraph 7 of this AGREEMENT.

4. OSHA agrees that the total penalty is amended to $1575. Failure of the EMPLOYER to comply with the terms of this AGREEMENT shall cause the penalty to revert to the initially proposed penalty of $3150.

5. In consideration of the foregoing amendment(s) and/or modification(s) to the citation(s), the EMPLOYER hereby waives its right to contest said citation(s) pursuant to Section 10(c) of the Occupational Safety and Health Act of 1970. It is understood and agreed by the Occupational Safety and Health Administration and the EMPLOYER that the citation(s) as amended and/or modified by this agreement shall be deemed a final order not subject to review by any court or agency.

6. The EMPLOYER agrees to immediately post a copy of this Settlement Agreement in the same manner and place as the Citations (Citations are required by law to be posted in a prominent place at or near the location of the violation(s). Citations must remain posted until the violations cited have been corrected, or for three working days (excluding weekends and federal holidays), whichever is longer.

7. Each party hereby agrees to bear its own fees and other expenses incurred by such party in connection with any stage of this proceeding.

_____
FOR THE EMPLOYER

_____
FOR THE OCCUPATIONAL SAFETY AND HEALTH ADMINISTRATION

7/3/01
_____
DATE SIGNED

7/5/01
_____
DATE SIGNED

********NOTICE TO EMPLOYEES********

The law gives you or your representative the opportunity to object to any abatement date set for a violation if you believe that the date to be unreasonable. Any contest of the abatement dates of the citations referred to in paragraph 1 of this Settlement Agreement must be mailed to the following address within 15 working days (excluding weekends and federal holidays) of the receipt by the EMPLOYER of the original citations:

U.S. Department of Labor
Occupational Safety and Health Administration
639 Granite Street - 4th Floor
Braintree, Massachusetts 02184
(617) 565-6924

Occupational Safety and Health Administration
Boston Area Office South
639 Granite Street—4th floor
Braintree, MA 02184
Phone: (617)565-6924 FAX: (617)565-6923



# Citation and Notification of Penalty

**To:**
Care Free Homes Corporation
and its successors
239 Huttleston Avenue
Fairhaven, MA 02719-1957

Inspection Number:  302926373
Inspection Date(s):  02/02/2001-02/06/2001
Issuance Date:  06/22/2001

**Inspection Site:**
Lot 14-5 Pirates Cove Road
Osterville, MA 02655

*The violation(s) described in this Citation and Notification of Penalty is (are) alleged to have occurred on or about the day(s) the inspection was made unless otherwise indicated within the description given below.*

This Citation and Notification of Penalty (this Citation) describes violations of the Occupational Safety and Health Act of 1970. The penalty(ies) listed herein is (are) based on these violations. You must abate the violations referred to in this Citation by the dates listed and pay the penalties proposed, unless within 15 working days (excluding weekends and Federal holidays) from your receipt of this Citation and Notification of Penalty you mail a notice of contest to the U.S. Department of Labor Area Office at the address shown above. Please refer to the enclosed booklet (OSHA 3000) which outlines your rights and responsibilities and which should be read in conjunction with this form. Issuance of this Citation does not constitute a finding that a violation of the Act has occurred unless there is a failure to contest as provided for in the Act or, if contested, unless this Citation is affirmed by the Review Commission or a court.

**Posting** - The law requires that a copy of this Citation and Notification of Penalty be posted immediately in a prominent place at or near the location of the violation(s) cited herein, or , if it is not practicable because of the nature of the employer's operations, where it will be readily observable by all affected employees. This Citation must remain posted until the violation(s) cited herein has (have) been abated, or for 3 working days (excluding weekends and Federal holidays), whichever is longer. **The penalty dollar amounts need not be posted and may be marked out or covered up prior to posting.**

**Informal Conference** - An informal conference is not required. However, if you wish to have such a conference you may request one with the Area Director during the 15 working day contest period. During such an informal conference you may present any evidence or views which you believe would support an adjustment to the citation(s) and/or penalty(ies).

If you are considering a request for an informal conference to discuss any issues related to this Citation and Notification of Penalty, you must take care to schedule it early enough to allow time to contest after the informal conference, should you decide to do so. Please keep in mind that a written letter of intent to contest must be submitted to the Area Director within 15 working days of your receipt of this Citation. The running of this contest period is not interrupted by an informal conference.

If you decide to request an informal conference, please complete, remove and post the page 3 Notice to Employees next to this Citation and Notification of Penalty as soon as the time, date, and place of the informal conference have been determined. Be sure to bring to the conference any and all supporting documentation of existing conditions as well as any abatement steps taken thus far. If conditions warrant, we can enter into an informal settlement agreement which amicably resolves this matter without litigation or contest.

You should be aware that OSHA publishes information on its inspection and citation activity on the Internet under the provisions of the Electronic Freedom of Information Act. The information related to your inspection will be available 30 calendar days after the Citation Issuance Date. You are encouraged to review the information concerning your establishment at WWW.OSHA.GOV. If you have any dispute with the accuracy of the information displayed, please contact this office.

**U.S. Department of Labor**
Occupational Safety and Health Administration



# NOTICE TO EMPLOYEES OF INFORMAL CONFERENCE

An informal conference has been scheduled with OSHA to discuss the citation(s) issued on

06/22/2001.  The conference will be held at the OSHA office located at Boston Area Office

South,  639  Granite  Street-4th  floor,  Braintree,  MA,  02184  on  _____  at

_____.  Employees and/or representatives of employees have a right to attend an

informal conference.

# U.S. DEPARTMENT OF LABOR
## OCCUPATIONAL SAFETY AND HEALTH ADMINISTRATION

### GUIDELINES FOR PREPARING AN ADEQUATE
### VERIFICATION OF ABATEMENT LETTER

OSHA cannot close out your file until adequate verification of abatement has been provided.

Please include the following in your abatement letter(s):

- Employer's name and address;

- OSHA inspection number (from the citation);

- For each item you are reporting on, indicate the Citation Number, Item Number, Instance, date corrected, and method of correction; (give a brief description of what actions were taken to correct each hazard)

    EXAMPLE:

    Citation 01, Item 01, Instance (a) -- Corrected on (DATE) by installing a guard on the Black & Decker table saw.

- For those items, only where it is specifically noted on the citation that "ABATEMENT DOCUMENTATION IS REQUIRED FOR THIS ITEM", please provide documentary evidence that abatement is complete.  Such evidence may include, but is not limited to, evidence of the purchase or repair of equipment, photographic or video evidence, or other written records;

- A statement that affected employees and their representatives have been informed of the abatement;

- A statement that the information submitted is accurate;

- The signature of the employer or the employer's authorized representative.

- Certification of Abatement must be received by OSHA within 13 calendar days after the Abatement Date.

The Hazard Referenced In: Care Free Homes Corporation OSHA# 302926373  C6957

## ABATEMENT CERTIFICATION FORM

The hazard referenced in Inspection #302926373 for violation identified as:
(Give a brief description of what actions were taken to correct each hazard)


Citation #_____, Item #_____ was corrected on (date)_____,

_____
(Describe Action Taken)

Citation #_____, Item #_____ was corrected on (date)_____,
_____
(Describe Action Taken)

Citation #_____, Item #_____ was corrected on (date)_____,
_____
(Describe Action Taken)

Citation #_____, Item #_____ was corrected on (date)_____,
_____
(Describe Action Taken)

Citation #_____, Item #_____ was corrected on (date)_____,
_____
(Describe Action Taken)

Citation #_____, Item #_____ was corrected on (date)_____,
_____
(Describe Action Taken)

Citation #_____, Item #_____ was corrected on (date)_____,
_____
(Describe Action Taken)

Citation #_____, Item #_____ was corrected on (date)_____,
_____
(Describe Action Taken)

I Attest that the information contained in this document is accurate, and I further attest that affected employees and their representatives have been informed of this abatement.


_____
Employers Signature


_____
Typed or Written Name

Occupational Safety and Health Administration
Boston Area Office South
639 Granite Street-4th floor
Braintree, MA 02184
Phone: (617)565-6924  FAX: (617)565-6923

06/22/01                                                    302926373


Care Free Homes Corporation
239 Huttleston Avenue
Fairhaven, MA   027191957


The recent inspection of your workplace revealed no instances of repeated, willful, or failure-to-abate violations, nor were there a significant number of high gravity serious violations.  Additionally, the compliance officer has reported that you have a good understanding of the actions necessary to correct the violations that were cited, and that you are willing to make those corrections by the date(s) specified in the citation.

The good faith you have exhibited, and the absence of repeated, willful, or failure-to-abate violations, makes your firm eligible for an Expedited Informal Settlement Agreement (EISA).  Under this program, an employer and OSHA can enter into an Informal Settlement Agreement without going through the formal procedure of meeting in the area office.

However, if you decide to enter into the Expedited Informal Settlement Agreement, you should be aware that you relinquish your right to contest the citations and penalties.

The Expedited Informal Settlement Agreement can be used only where the sole issue of dispute is the dollar amount of proposed penalties.  If you wish to discuss, change, or object to any other aspect of the inspection or citations, including abatement dates, validity of violations, classification of violations, then the Expedited Informal Settlement Agreement cannot be used.  Under those circumstances, you may request an Informal Conference with me and/or exercise your contest rights as explained in OSHA pamphlet 3000, Employer Rights and Responsibilities Following an OSHA inspection, revised 1996.

You should carefully read the enclosed Expedited Informal Settlement Agreement to determine whether the terms of the agreement are acceptable to you.  Key elements of the agreement:  for OSHA to agree to a 50 percent reduction in the total penalty amount proposed; for the employer to correct the violations by the abatement date(s) set forth in the citation(s); for the employer to provide evidence of corrective actions taken and to provide written certification that all items have been abated at the time of final abatement.  Please note that failure to comply with any of the terms of this agreement will cause the penalty to revert to the initial proposed penalty.

If hand delivered, the signed agreement and a check for the full amount of the reduced penalty (50 percent of the total proposed penalties) must be delivered to the area office prior to the expiration of the 15-working-day contest period.  If mailed, the letter must be postmarked not later than the day that the 15-working-day contest period ends.

If you have any questions regarding the Expedited Informal Settlement Agreement, please contact this office at (617) 565-6924.

Sincerely,

Brenda J. Gordon
Area Director

Occupational Safety and Health Administration

The Hazard Referenced In: Care Free Homes Corporation OSHA# 302926373  C6957

## ABATEMENT CERTIFICATION FORM

The hazard referenced in Inspection #302926373 for violation identified as:
**(Give a brief description of what actions were taken to correct each hazard)**

Citation # ___1___ , Item # ___1___ was corrected on (date) _2/12/01_ .

_Attic Cover to all Employees only per Procedures_
(Describe Action Taken)

Citation # ___1___ , Item # ___2___ was corrected on (date) _2/15/01_ ,

_Face Protection Braces were Purchased and Installed_
(Describe Action Taken)

Citation # ___1___ , Item # ___3___ was corrected on (date) _2/12/01_ ,

_Railing around hole was built and installed_
(Describe Action Taken)

Citation #_____ , Item #_____ was corrected on (date)_____ ,

_____
(Describe Action Taken)

Citation #_____ , Item #_____ was corrected on (date)_____ ,

_____
(Describe Action Taken)

Citation #_____ , Item #_____ was corrected on (date)_____ ,

_____
(Describe Action Taken)

Citation #_____ , Item #_____ was corrected on (date)_____ ,

_____
(Describe Action Taken)

Citation #_____ , Item #_____ was corrected on (date)_____ ,

_____
(Describe Action Taken)

I Attest that the information contained in this document is accurate, and I further attest that affected employees and their representatives have been informed of this abatement.

_____
Employers Signature

DANA Pickup
Typed or Written Name

# *Care Free Homes, Inc.*

239 Huttleston Avenue
Fairhaven, MA 02719

Tele: 508-997-1111
Fax:  508-997-1297

July 2, 2001

INSPECTION # 302926373

## CITATION # 1  ITEM # 1

The use of hoses is not permitted for hoisting or lowering tools.
Note posted on information board and given to all employees. (copy enclosed)
All supervisors are to strictly enforce this rule.
This citation (and all citations) was one of the topics at monthly meeting on February 16, 2001.
Meeting included all employees and supervisors.  Discussed proper procedure on hoisting
and lowering and any moving of all tools, power or manual, and all were instructed not to
ever move any power tool by a hose or cord.

## CITATION # 1 ITEM # 2

On February 15, 2001, fall protection CWP back braces for the scaffolds
were purchased from Beacon Lumber. (invoice copy attached)
This citation (with all citations) was on of the topics at monthly meeting on February 16, 2001.
Meeting included all employees and supervisors.  Discussed proper procedure for installing
CWP back braces on scaffolds and all were instructed that using these braces were mandatory.

## CITATION # 1 ITEM #3

On February 12, 2001 a railing was built from on the job site lumber to
be placed around the hole in the floor until the stairs were installed.
This citation (with all citations) was on of the topics at monthly meeting on February 16, 2001.
Meeting included all employees and supervisors.  Discussed proper procedure for immediately
building and installing rail around any hole cut out in the floor and that the rail is to be left in place
until the stairs are installed.

# Care Free Homes, Inc.

239 Huttleston Avenue
Fairhaven, MA 02719

Tele: 508-997-1111
Fax:  508-997-1297

## IMPORTANT NOTICE
## FOR ALL EMPLOYEES

February 12, 2001

TO ALL EMPLOYEES

THE USE OF HOSES AND/OR CORDS TO MOVE ANY POWER TOOL IS NOT AND

NEVER HAS BEEN ALLOWED AND IS NOT PROPER PROCEEDURE IN MOVING

ANY POWER TOOL.  PROPER PROCEDURE FOR MOVING ANY TOOL IS TO

WALK OVER TO THE TOOL AND PICK IT UP BY THE HANDLE.  PLEASE BE SURE

TO UNPLUG ANY ELECTRIC POWER TOOLS PRIOR TO MOVING THEM.

THERE WILL BE A DEMONSTRATION ON PROPER PROCEDURE AT THE

MEETING ON THIS FRIDAY FEBRUARY 16, 2001

DANA

# BEACON LUMBER COMPANY
513 CHURCH ST., NEW BEDFORD, MA 02745 PHONE 995-1766

*Rec 2/15/01 Ims Ret 11*
*Po 32115 Cpn*

SOLD TO

CARE FREE HOMES INC.
239 HUTTLESTON AVE

FAIRHAVEN, MA 02719

SHIP TO

*Shop Stock*    *Wends ANY*

NO RETURNS OR REFUNDS UNLESS ACCOMPANIED BY THIS INVOICE. AMOUNTS PAST DUE ARE SUBJECT TO A SERVICE CHARGE OF 1½% PER MONTH (18% PER ANNUM)

| ACCOUNT # | CUSTOMER P.O. | TERMS | ORDER # | ORDER DATE | SLSMN | INVOICE # | INVOICE DATE |
|---|---|---|---|---|---|---|---|
| CAR72 | STOCK | 2%/10TH N/30 | 1036 | 02/12/01 | 0 | 55074 | 02/15/01 |

| ORDERED | B/O | SHIPPED | U/M | DESCRIPTION | | PRICE | AMOUNT |
|---|---|---|---|---|---|---|---|
| 12 | 12 O 12 | O | EA | CWP BACK BRACES | T | 13,500 | -162.00* |
| 0 | 0 | 6 | EA | AD7 ALUM PLANKS | T | 109.250. | 655.50* |

*Aviva Caruso*

FEB 15, 2001  11:09:58    QT:  4  1/ 1

| | FILED BY | CHK'D BY | DRIVER | |
|---|---|---|---|---|
| | | | S.P. | |

**************
* INVOICE *
**************

SHIP VIA

PAGE  1  OF  1

| MERCHANDISE | 017.50 |
|---|---|
| OTHER | 0.00 |
| TAX    5.00% | 40.88* |
| FREIGHT | 0.00 |
| TOTAL | 858.38 |

OUR STORE HOURS MONDAY-FRIDAY 6:30-5:00
RECEIVED BY        SATURDAY 7:00-4:00

DRIVER'S RECEIPT STATEMENT COPY